UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| HAROLD HEMPSTEAD, | ) |  |  |
|---|---|---|---|
| Plaintiff, | ) |  |  |
| v. | ) | No.: | 3:21-CV-417-RLJ-DCP |
| TONY PARKER, KENNETH WILLIAMS, STEVEN WHEELER, EMMA RICH, KATIE CAMPBELL, SHAWN PHILLIPS, ERNEST JONES, and NATHAN TOLLETT, | ) |  |  |
| Defendants. | ) |  |  |

## **MEMORANDUM AND ORDER**

This is a prisoner's pro se complaint for violation of 42 U.S.C. § 1983 that is proceeding as to Plaintiff's claims that Defendants failed to provide him adequate medical care, that Defendants Wheeler, Parker, and Campbell denied him access to his medical records, and that Defendant Phillips retaliated against him [*See* Doc. 21 p. 13; Doc. 46 p. 2-3]. Defendants Emma Rich, Katie Campbell, Nathan Tollett, Steven Wheeler, and Ernest Jones[1] have now filed separate motions to be dismissed from this action [Docs. 51, 53, 55, 57, 59, 73]; Plaintiff has filed responses in opposition to the motions filed by Defendants [Docs. 63-66, 85]; Defendants have filed replies to Plaintiff's responses [Docs. 67-71, 88]; and Plaintiff filed sur-replies thereto [Doc. 87].

---

[1] Plaintiff misnamed Defendants Tollett and Jones in his pleadings [*Compare* Doc. 20 p. 2 *with* Docs. 57 and 73]. The Clerk is **DIRECTED** to update the docket to reflect the proper spelling of Defendant Jones' name as "Ernest Jones" and Defendant Tollett's name as "Nathan Tollett."

Additionally, Plaintiff has moved for an extension of time within which to properly serve Defendants Jones and Wheeler [Docs. 82 and 83], requested that the United States Marshals Service be appointed for service [Doc. 82], moved to substitute Defendant Wheeler with the current Chief Executive Officer ("CEO") of Centurion of Tennessee, LLC ("Centurion") [Doc. 89], and moved for summonses to reissue as to Defendants Jones and Wheeler and for Defendants to disclose the mailing addresses of these Defendants [Doc. 90]. Defendants have opposed these motions [Docs. 91, 92, and 94]. Defendants have also moved for an order requiring Plaintiff to serve documents on them or waive the requirement that Plaintiff do so and allow the date of electronic filing to count as the date of Defendants' service going forward [Doc. 93]. Plaintiff has filed a response [Doc. 97].

Upon consideration of the parties' filings and the applicable law, the Court finds that the motions to dismiss filed by Defendants Rich, Campbell, and Tollett [Docs. 51, 53, 55, 57] will be **GRANTED in part and DENIED in part**; Defendants Wheeler and Jones' motions to dismiss [Docs. 59 and 73] will be **GRANTED**; Plaintiff's motions for an extension of time to serve Jones and to appoint the United States Marshals for service of process [Doc. 82] will be **DENIED**; Plaintiff's motions for time to serve the current CEO for Centurion [Doc. 83], motion to substitute party [Doc. 89], and motion to reissue summonses [Doc. 90] will be **GRANTED** as set forth below; and Defendants' motion to require Plaintiff to mail his filings to Defendants or waive the requirement [Doc. 93] will be **GRANTED**.

I. MOTIONS TO DISMISS — FAILURE TO STATE A CLAIM

A. Standard of Review

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face "when the plaintiff pleads

2

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. When considering a plaintiff's claims, all factual allegations in the complaint must be taken as true. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, the Supreme Court has cautioned:

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 679 (internal citations omitted).

Additionally, while Plaintiff's claim survived a frivolity review upon initial screening under the Prison Litigation Reform Act ("PLRA"), the standard for a Rule 12(b)(6) motion is a higher bar than the frivolity standard in 28 U.S.C. § 1915. *See, e.g, Leach v. Corr. Corp. of Am.*, No. 3:16-CV-2876, 2017 WL 35861, at *3 (M.D. Tenn. Jan. 4, 2017) (stating the required screening of a plaintiff's complaint under the PLRA is "a lower burden for the plaintiff to overcome in order for his claims to proceed" than a motion to dismiss under Rule 12(b)(6)). It is with these standards in mind that the Court considers the Defendants' motions.

B.     **Relevant Allegations of Operative Complaint**

In November 2020, Plaintiff, a Florida inmate who was transferred to the custody of the Tennessee Department of Correction ("TDOC") over three years earlier pursuant to an interstate corrections compact between the states, was transferred to Bledsoe County Correctional Complex ("BCCX") [Doc. 20 p. 2-3]. Plaintiff, who suffered pain in his lower back and upper right leg that made it difficult and painful to walk, was informed that the physical therapy treatment he had

3

received at a previous TDOC institution would not be continued due to the absence of a physical therapist at BCCX [*Id*.].

On March 29, 2021, Plaintiff was evaluated by Defendant Dr. Ernest Jones [*Id*. at 4]. Plaintiff advised Dr. Jones of severe pain in his hip and left knee, and he requested a steroid shot and/or a wheelchair or cane [*Id.*]. Defendant Jones advised Plaintiff that the pain in his knee was likely due to Plaintiff overworking it, and he did not issue Plaintiff a wheelchair or cane or provide him with any medication [*Id*.]. Dr. Jones sent Plaintiff back to his unit without any medical treatment [*Id*.].

A few weeks later, Plaintiff began having pain his lower right abdomen, and a lump appeared in that area [*Id*.]. On July 15, 2021, Plaintiff was advised he had an inguinal hernia[2] after evaluation by Defendant Nurse Practitioner ("NP") Nathan Tollett [*Id*. at 5, 7]. NP Tollett told Plaintiff that his condition would be monitored, but that budget constraints would not allow for a specialty consult or surgical remedy unless the hernia became strangulated [*Id*. at 7]. Plaintiff advised NP Tollett that a strangulated hernia is life-threating, and NP Tollett advised Plaintiff that there would be a twelve-hour window where surgery could be performed after the hernia became strangulated [*Id*.].

On August 24, 2021, Defendant Jones saw Plaintiff regarding a prior sick call request concerning Plaintiff's hernia and previously fractured wrist [*Id*. at 8]. During that evaluation, Plaintiff requested a hernia belt, a low-residue[3] diet, and an ultrasound [*Id*.]. Dr. Jones advised

---

[2] An inguinal hernia is a protrusion of tissue through a weak spot in the abdominal muscles that may or may not cause pain. While not necessarily dangerous, it can lead to life-threating complications if the hernia becomes strangulated. *See* Mayo Clinic, *Inguinal hernia*, https://www.mayoclinic.org/diseases-conditions/inguinal-hernia/symptoms-causes/syc-20351547 (last visited May 6, 2022).

[3] A low-residue diet is one that limits high-fiber foods in order to ease digestion. WebMD, *Should You Try a Low-Residue Diet?*, https://www.webmd.com/ibd-crohns-disease/low-residue-diet-foods (last visited May 6, 2022).

4

Plaintiff that Centurion (TDOC's contracted medical provider) would not allow him to refer Plaintiff to a specialist [*Id*.]. Plaintiff claims that Dr. Jones further advised Plaintiff that "nobody was going to contact Florida for the money for the surgeries," but that surgery for Plaintiff's hernia would be arranged if the hernia strangulated [*Id*.].

Plaintiff contends that his hernia has resulted in "pain in his groin and an enlarged scrotum," that it causes constipation, and that it makes it painful for Plaintiff to walk, cough, urinate, defecate, or sit up [*Id*.]. This pain, along with the other pain Plaintiff experiences with his lower back, upper right leg, and left knee has essentially eliminated Plaintiff's ability to participate in classes or religious services, and it causes a "constant state of fear that his lower body and mobility problems are going to cause a quicker deterioration of his hernia until it strangulates" [*Id*. at 8-9]. Plaintiff contends he is also in fear that if he does not die from a strangulated hernia, he could die from the anesthesia that he would need for the strangulated hernia surgery [*Id*. at 9].

Plaintiff maintains that he is being denied necessary medical care to increase Centurion's profits, and that as a Florida inmate, he is entitled right to the level of care for his hernia mandated by the settlement agreement in *Copeland v. Jones*, No. 4-15-cv-452 (N.D. Fla. 2017) [*Id*. at 9].

Plaintiff states that he has sent several request forms to Dr. Emma Rich, the chief physician at BCCX, and BCCX Health Services Administrator Katie Campbell, explaining his rights and asking for immediate surgery [*Id*. at 10]. He contends that Defendant Campbell refuses to administratively process any consult for specialty care inconsistent with the cost-saving practices Centurion CEO Steven Wheeler instituted [*Id*. at 10-11]. Plaintiff maintains that Centurion's CEO is ultimately responsible for determining who receives specialty consults for non-strangulated hernias, and that he has instituted a practice of denying consults and surgeries in cases where the hernia has not yet strangulated [*Id*. at 10].

5

In August 2021, Plaintiff began circulating an "Important Notice" to BCCX inmates to obtain witnesses and information to support a complaint to the Department of Justice regarding conditions at TDOC facilities [*Id*. at 16]. On August 18, 2021, Plaintiff was placed in segregation under "pending investigation" status at BCCX per the orders of Warden Phillips [*Id*. at 17].

Plaintiff next contends that Defendant Campbell and Centurion have refused to allow Plaintiff's sister to purchase Plaintiff's medical and dental records pursuant to a medical release signed by Plaintiff, with the exception of a copy of his July 2020 Covid-19 results [*Id*. at 24-25]. Plaintiff maintains that Defendants Wheeler, Campbell, and Parker have the authority to provide Plaintiff with these records and are refusing to do so [*Id*. at 25].

In the instant suit, Plaintiff seeks various injunctive relief, along with compensatory and punitive damages [*Id*. at 29-31].

### C. Analysis

#### 1. State Tort Claims

Defendants contend that Plaintiff's claims against them should be dismissed because they sound in State tort law, and that Plaintiff has failed to comply with the provisions of Tennessee Health Care Liability Act ("THCLA"), Tenn. Code Ann. § 29-26-101, *et seq*., prior to filing this action. The THCLA requires mandatory compliance with the Act's notice and certification requirements. *Reed v. Speck*, 508 F. App'x 415, 423-24 (6th Cir. 2012); *see also* Tenn. Code Ann. §§ 29-26-121 (written notice of claim) and 29-26-122 (certificates of good faith). Plaintiff has not complied with these requirements, and therefore, Defendants' motions to dismiss are **GRANTED** as to any State health-care liability claims in the operative complaint.

6

### 2. Florida Consent Decree

Defendants move to dismiss Plaintiff's claims that has rights to medical care for his hernia mandated by the 2017 settlement agreement in a federal case originating in Florida, *Copeland v. Jones*, No. 4-15-cv-452 (N.D. Fla. 2017). Federal courts look to State contract law to see whether a party is entitled to relief under an agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). In Tennessee, a non-party seeking to enforce a contract has the burden of proving he is an intended beneficiary of the contract. *Smith v. Chattanooga Med. Inv'rs, Inc.*, 62 S.W.3d 178, 185 (Tenn. Ct. App. 2001) (citation omitted). Plaintiff is a prisoner in TDOC custody who developed a hernia in 2021, and as such, he is neither a party to nor a beneficiary of the settlement agreement, which expressly defines its class members [Doc. 51-1].[4] In addition, it appears that the Consent Decree at issue was terminated effective August 28, 2021. *See Copeland et al v. Mark S. Inch*, No. 4:15-cv-452, 2021 WL 8055603 (N.D. Fla. Aug. 28, 2021). Therefore, Defendants' motions to dismiss Plaintiff's claims against them based on the provisions of the Florida Consent Decree will be **GRANTED**.

### 3. Wrist Surgery Claim

Defendants argue that Plaintiff's claims regarding the alleged denial of medical care for a 2017 fractured wrist were deemed time-barred by the Court's December 17, 2021, screening Order of Plaintiff's original complaint [Doc. 5], and therefore, any such claims in the amended and operative complaint are not before the Court. Plaintiff maintains that the claim was reasserted in

---

[4] The Court takes judicial notice of the Consent Order as a public record. *See Nashville Underground, LLC v. AMCO Ins. Co.*, 523 F. Supp. 3d 1006, 1020 n. 7 (M.D. Tenn. 2021) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice") (quoting *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).

his amended complaint, and as the Court's January 27, 2022, screening Order of the amended complaint did not again deem the claim time barred, it is before the Court.

The Court need not wade into a dispute about whether Plaintiff's claim was revived, as it is apparent that the claim is barred by Tennessee's statute of limitations. As the Court stated in its initial screening Order:

> Plaintiff alleges that he had a wrist fracture before his transfer to TDOC in 2017, but that he did not submit a sick-call request related to his fractured wrist until August 2021 [Doc. 1 p. 2-3, 6]. Plaintiff presents the Court with no information from which it should infer that Plaintiff's wrist remained broken four years after his transfer to TDOC custody, and any claim related to the denial of surgery and/or treatment for Plaintiff's wrist is barred by Tennessee's one year statute of limitations. *See* Tenn. Code Ann. § 28-3-104; *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 in a § 1983 claim).

[Doc. 5 p. 14-15]. Therefore, Defendants' motions to dismiss will be **GRANTED** as to Plaintiff's medical claims regarding his wrist.

### 4. Exhaustion of Administrative Remedies

Defendants move to dismiss the claims against them on the ground that Plaintiff has failed to exhaust his administrative remedies in compliance with the PLRA, 42 U.S.C. § 1997e(a), prior to filing suit. Plaintiff disputes this claim and points out that he specifically stated he exhausted his medical care and records claims in his complaint. Defendants claim that Plaintiff's failure to allege more specific facts demonstrating that he fully utilized the appropriate process is fatal to his case.

Because exhaustion of administrative remedies is an affirmative defense that the defendant must plead and prove, the Court finds summary judgment the more appropriate vehicle for raising this defense. *Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *see also Anderson v. Jutzy*, 175 F. Supp. 3d 781, 787 (E.D. Mich. 2016) ("The summary judgment motion is especially well suited to

8

Case 3:21-cv-00417-RLJ-DCP   Document 98   Filed 05/11/22   Page 8 of 19   PageID #: 1119

pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence."). Therefore, Defendants' motion to dismiss on this ground will be **DENIED** without prejudice to their ability to assert it in a properly supported motion for summary judgment.

### 5. Eighth Amendment Denial of Medical Care

Defendants maintain they are entitled to be dismissed as to Plaintiff's claim that he has been denied adequate medical care in violation of his constitutional rights. The Eighth Amendment "forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). This subjective state of deliberate indifference requires a plaintiff to show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, the fact that a prisoner might disagree with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* Thus, differences in the opinions of inmates and medical personnel regarding the appropriate treatment, even where the prisoner is ultimately misdiagnosed and therefore inadequately treated, is not enough to state a claim of

9

deliberate indifference. *See, e.g., Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997). Rather, deliberate indifference requires a mental state amounting to criminal recklessness, and allegations of negligence are insufficient. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40).

Plaintiff has sued Defendants Rich, Campbell, and Wheeler in their official capacities. Suit against these Defendants in their official capacities is tantamount to suit against their employer, Centurion. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992). In an action against an officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993).

Plaintiff's claims against these Defendants in their official capacities are assessed with municipal-liability standards. *See Thomas v. Coble*, 55 F. App'x 748, 448-49 (6th Cir. 2003); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1994). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, to demonstrate municipal liability, a plaintiff must identify a municipal policy or custom and show that his particular injury was incurred due to the execution of that policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and quotation marks omitted). Accordingly, to prevail on a § 1983 claim against Centurion, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

In addition to his official-capacity claims alleging the denial of adequate medical treatment, Plaintiff has also sued Defendants Tollett, Campbell, and Jones in their individual capacities. To hold these Defendants individually liable, Plaintiff must demonstrate that each particular Defendant was personally involved in the constitutional deprivations alleged. *See, e.g., Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

Plaintiff has alleged that Defendants Jones and Tollett refused to provide him with any sort of medical treatment, that Centurion's CEO has implemented a practice of denying any specialty consults and/or any non-urgent surgery solely for financial reasons, and that Defendants Rich and Campbell have enforced this practice despite awareness of the pain and suffering caused by the denial of medical care [*See, generally*, Doc. 20]. Therefore, at this stage, the Court finds that Plaintiff has alleged sufficient facts to allow his Eighth Amendment medical care claim to proceed, and Defendants' motions to dismiss will be **DENIED** as to this claim.

6. **Fourteenth Amendment Due Process Claim**

Defendants Wheeler and Campbell maintain that Plaintiff cannot sustain a due process claim against them for failure to provide Plaintiff with his medical records upon request, as Plaintiff has not pled and proven that the State's remedies for redressing the wrong are inadequate; he has not personally requested his medical records and been denied; and he has not demonstrated that a Centurion policy or custom prohibited him from receiving his records.

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Therefore, to prevail on a due process claim, Plaintiff must demonstrate that he has an interest to

11

which due process attaches. *See Waeschle v. Dragovic*, 576 F.3d 539, 544-45 (6th Cir. 2009) ("The due process clause only protects those interests to which one has a legitimate claim of entitlement."). Further, he must demonstrate that the State's corrective procedures were inadequate to provide him with notice and an opportunity to be heard on the request. *Brickner v. Voinovich*, 977 F.2d 235, 237 (6th Cir. 1992) (citations omitted).

Plaintiff claims that he signed a medical release to allow his sister to obtain his medical records, and that he was denied his records by Defendant Campbell. He does not, however, demonstrate that he could not appeal that denial, that there are no other procedures by which he could seek the information, or that he even attempted to address the denial of his records through any means other than filing this lawsuit. Therefore, he has not demonstrated that the State lacks remedial procedures through which to seek the sought relief.

Moreover, Plaintiff has no protected interest in his medical records. *See, e.g., Smith v. Myers*, No. 2:16-CV-919-ALB, 2019 WL 9904324, *5 (M.D. Ala. Dec. 30, 2019) (gathering cases and holding "[w]hile inmates have a constitutional right of access to adequate medical care, *see Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976), they have no concomitant constitutionally protected right of review, or access to, their prison medical or mental health records"), *report and recommendation adopted*, No. 216cv919-RAH, 2020 WL 4819535 (M.D. Ala. Aug. 19, 2020); *Blanton v. Blue*, No. 4:16CV-P10, 2016 WL 2858922, at *3 (W.D. Ky. May 16, 2016) (collecting cases holding prisoner has no constitutional right to review or obtain copies of his prison medical records); *see also* Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 C.F.R. § 164.254 (providing that "correctional institution . . . may deny, in whole or in part, an

inmate's request to obtain a copy of protected health information" for reasons of health, safety, or security of any persons).[5]

Therefore, the Court finds that Plaintiff's allegations regarding the denial of his medical and dental records fails to state a cognizable constitutional claim against Defendants, and their motions to dismiss will be **GRANTED** as to this issue.

## II.    MOTIONS TO DISMISS — PROCESS AND PERSONAL JURISDICTION

Defendants Wheeler and Jones have each additionally moved for dismissal for lack of personal jurisdiction due to Plaintiff's failure to effectuate proper service against them [Doc. 59 and Doc. 73].

Rule 4(e) of the Federal Rules of Civil Procedure prescribes that service upon individuals may be effected pursuant to the law of the state in which the district court is located. *See* Fed. R. Civ. P. 4(e). Tennessee law permits service to be effected on an individual by delivering copies of a summons and the complaint to the individual or an agent authorized by appointment or by law to receive service of process, or by mailing copies of a summons and the complaint to the individual, using the registered return receipt or certified return receipt method of mailing. *See* Tenn. R. Civ. P. 4.04(1), (10) and 4.05. A company may be served by delivering a copy of the summons and complaint "to a partner or managing agent of the partnership or . . . association, or to an agent authorized by appointment of law to receive service on behalf of the partnership or association." Tenn. R. Civ. P. 4.04(3). Where process is served by mail, "the original summons. . . an affidavit of the person making service setting forth the person's compliance with the requirements of this rule; and, the return receipt shall be sent to and filed by the clerk. The person

---

[5] The Court also notes that TDOC's Administrative Policy and Procedure 113.52 outlines the procedures for an inmate to follow if he wishes to review his medical records. *See* https://www.tn.gov/content/dam/tn/correction/documents/113-52.pdf (last visited May 5, 2022).

13

making service shall endorse over his or her signature on the original summons the date of mailing a certified copy of the summons and a copy of the complaint to the defendant and the date of receipt of the return receipt from the defendant." Tenn. R. Civ. P. 4.03(2); *see also* Tenn. R. Civ. P. 4.04(10) ("The original summons shall be used for return of process pursuant to Rule 4.03(2).").

The record before the Court establishes that Defendant Wheeler was not personally served, did not reside at the service address, and did not authorize anyone at that address to accept service on his behalf [Doc. 59-1 ¶¶ 2-4]. Additionally, there is no proof of service in the form of a return to indicate that Defendant Wheeler was served with process [*See, generally*, docket]. Similarly, the record before the Court establishes that Defendant Jones was never personally served with process, did not receive a copy of the summons and complaint via certified mail, copies of the summons and complaint were not left at his dwelling or usual place of abode with someone who resides there, and Dr. Jones did not authorize anyone to accept service on his behalf [Doc. 73-1 ¶¶ 3-7]. There is no proof of service in the form of a return to indicate that Defendant Jones was served [*See, generally*, docket].

The Court finds that Plaintiff has not served process on Defendants Wheeler or Jones in accordance with the Federal Rules of Civil Procedure or the Tennessee Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(e); Tenn. R. Civ. P. 4.04 and 4.05. Moreover, the time to serve these Defendants has expired under Rule 4(m) of the Federal Rules of Civil Procedure, as over 90 days has passed since Plaintiff filed his original Complaint, which included both Wheeler and Jones as Defendants. *See Grove v. Mohr*, No. 2:18-cv-1492, 2020 WL 1242395, at *6 (S.D. Ohio Mar. 16, 2020) ("[F]iling an amended complaint does not reset the 90-day time limit for serving existing defendants."); *see also Harris v. City of Cleveland*, 7 F. App'x 452, 456 (6th Cir. 2001) ("A plaintiff cannot extend the service period with respect to an already-named defendant by filing an

14

amended complaint naming additional defendants."). Failure to timely serve a defendant mandates dismissal unless the plaintiff demonstrates good cause for the failure to effect timely service. *Harris*, 7 F. App'x at 456 (citation omitted).

With respect to Defendant Jones, Plaintiff argues that he called BCCX on January 12, 2022, and was advised that Defendant Jones no longer worked at the facility; he wrote letters to Defendant Wheeler and TDOC officials asking for Defendant Jones' address; he sent Jones a waiver request to Centurion's Nashville address; and he mailed waiver requests to counsel for Centurion. Plaintiff states he also sent summonses and copies of the complaint to Wheeler for Wheeler and Jones by certified mail, and that Wheeler, as CEO of Centurion, was authorized to accept process on behalf of anyone in Centurion's employment. Plaintiff also maintains that the United States Postal Service implemented special procedures during Covid-19 that involved postal employees writing "C19" in the signature section of Certified Mail Return Receipt Requested forms rather than allowing the addressee or agent to sign, and that he mailed a copy of the complaint and summons to counsel for Centurion that was returned with the "C19" notation [Doc. 76 p. 18; Doc. 77 p. 20]. He maintains that is sufficient to demonstrate that an agent was properly served with process.

The Court finds none of Plaintiff's arguments persuasive. First, procedures within the United States Postal Service have no effect on how process is served under Tennessee law, and the postal service has no authority to determine who is an agent under the law. Acceptance by an agent, absent "evidence that the defendant intended to confer upon [the] agent the specific authority to receive and accept service of process for the defendant" is not proof of proper service. *Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 929 (E.D. Tenn. 2002). Second, actual knowledge of a lawsuit is not sufficient to cure "a technically defective service of process." *See*

15

*also Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (holding "actual knowledge of the action" cannot cure "a technically defective service of process") (citation omitted). Third, an individual is under no obligation to waive service, and failure to waive service does not establish proper service. *See* Fed. R. Civ. P. R. 4(e). Finally, counsel for Centurion is not authorized to accept service on a client's behalf merely because of the existence of an attorney-client relationship, and counsel's failure to accept waiver for these two Defendants does not constitute proper service. *McGehee v. Diversified Glob. Servs., LLC*, No. 3:14-1684, 2017 WL 1036432, at *4 (M.D. Tenn. Mar. 17, 2017) (holding attorney cannot "accept service of process which commences the action, without any authority to do so from his principal") (citing *Stone v. Bank of Commerce*, 174 U.S. 412, 421 (1899)).

Here, Plaintiff sought to serve Defendants Wheeler and Jones at incorrect addresses, failed to properly serve Defendants Wheeler and Jones, and failed to timely effect service. In the absence of proper service, the Court lacks jurisdiction over these Defendants. *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir. 1976) ("Due Process requires proper service of process in order to obtain *in personam* jurisdiction."). While the Court is not unsympathetic to the fact that, as a prisoner, resources at Plaintiff's disposal are limited, Plaintiff has not demonstrated any attempts to effect service on these individuals by any method other than mail. Further, Plaintiff is not indigent, and he is not entitled to have the United States Marshals serve process for him in this action. The Court finds that no good cause has been shown to extend the service deadline as to Jones and Wheeler, and these Defendants have not been served in compliance with Rule 4 of the Federal Rules of Civil Procedure. Therefore, their motions to dismiss [Docs. 59 and 73] will be **GRANTED**. Plaintiff's motions for an extension of time to serve Jones and to appoint the United

16

Case 3:21-cv-00417-RLJ-DCP   Document 98   Filed 05/11/22   Page 16 of 19   PageID #: 1127

States Marshals for service of process [Doc. 82] and to reissue a summons as to Jones [Doc. 90] will be **DENIED**.

However, the Court notes that Defendant Wheeler was sued only in his official capacity, and he is no longer the CEO of Centurion [Doc. 59-1 ¶7]. Therefore, as noted above, Plaintiff does not seek relief from Wheeler himself, but rather, Centurion. *See, e.g., Pusey*, 11 F.3d at 657. There is no information before the Court as to when Defendant Wheeler ceased to function as Centurion's CEO, and as such, the Court finds that Plaintiff should be permitted an opportunity to attempt service against that individual in his or her official capacity.

Inasmuch as waivers of service have been executed for other Centurion employees sued in their official capacities, i.e. Defendants Campbell and Rich [Docs. 23 and 25], it is not readily apparent that Plaintiff even must effect proper service against another Centurion employee in his or her official capacity to ensure that Centurion's CEO is a party to this action, or that Plaintiff needs to name a substituted party. *See Kentucky v. Graham*, 473 U.S. 159, 166 n. 11 (1985) ("In an official-capacity actin in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office."). To avoid any questions as to whether the Court can acquire personal jurisdiction over the responsible official, however, the Court will **GRANT** Plaintiff's motion for substitution of a party [Doc. 89] and an extension of time within which to serve the current CEO of Centurion [Doc. 83]. *See Amen*, 532 F.2d at 557 (finding proper service of process necessary to obtain personal jurisdiction over officials named in their official capacities). Because Plaintiff is not indigent, however, his request for the appointment of the United States Marshals Service to serve process will be **DENIED**.

Plaintiff's motion for a summons to reissue as to Centurion's CEO [Doc. 90] will be **GRANTED**. All other relief sought in the motion will be **DENIED**. To avoid additional delays

or needless litigation over the issue, the Clerk is **DIRECTED** to send the following by first class mail to Centurion's registered agent for service of process according to the Tennessee Secretary of State, C.T. Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546, https://tnbear.tn.gov/Ecommerce/FilingSearch.aspx (last visited May 4, 2022): a copy of the operative complaint [Doc. 20], a copy of this Order, two copies of Notice of Lawsuit and Request for Waiver of Service of Summons, a Waiver of the Service of Summons, and a postage prepaid envelope addressed to the Court. The Clerk is also **DIRECTED** to issue a summons for Centurion's registered agent for service of process and to return the issued summons to Plaintiff. In the event Centurion does not agree to waive service within thirty (30) days of entry of this Order, Plaintiff should attempt to serve the issued summons in accordance with Rule 4 of the Federal Rules of Civil Procedure.[6]

### III. MOTION TO WAIVE SERVICE OF PLAINTIFF'S FILINGS

Defendants have asked to require Plaintiff to serve them or allow the date of PACER filing to be the effective service date. The Court finds the motion well taken, and it [Doc. 93] will be **GRANTED**. Going forward, the date Plaintiff's filings are docketed in PACER will count as the date of service for all Defendants' deadlines.

### IV. CONCLUSION

For the reasons set forth above:

1. The Clerk is **DIRECTED** to update the Court's docket to properly identify Defendants Jones and Tollett as set forth in footnote one of this memorandum and order;

---

[6] The Court notes that Rule 4(d)(2) imposes a duty to avoid unnecessary costs of service. *See* Fed. R. Civ. P. 4(d)(2) ("An individual, corporation, or association that is subject to service ... and that receives notice of an action ... has a duty to avoid unnecessary costs of serving the summons.").

18

2. Defendants Rich, Tollett, and Campbell's motions to dismiss [Docs. 51, 53, 55, 57] are **GRANTED IN PART** and **DENIED in PART** as set forth above;

3. Defendants Jones and Wheeler's motions to dismiss [Docs. 59 and 73] are **GRANTED**, Plaintiff's motion for an extension of time to serve Jones [Doc. 82] is **DENIED** as moot; and Defendants' Jones and Wheeler are **DISMISSED**;

4. Plaintiff's motion to substitute Wheeler for the current CEO of Centurion is **GRANTED** [Doc. 89];

5. Plaintiff's motion [Doc. 83] for an extension of time within which to serve the current CEO of Centurion is **GRANTED**, and his request for Marshals Service to serve the process is **DENIED**;

6. Plaintiff's motion to reissue a summons [Doc. 90] is **GRANTED** only as to the CEO of Centurion, and the Clerk is **DIRECTED** to send issue the waiver/waiver request and summons as set forth above;

7. Defendants' motion to waive service and deem the date of Plaintiff's service the date of PACER filing [Doc. 93] is **GRANTED**; and

8. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge

19

Case 3:21-cv-00417-RLJ-DCP   Document 98   Filed 05/11/22   Page 19 of 19   PageID #: 1130